UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CORINNA GAPSCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22 CV 128 RWS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Corinna Gapsch brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  For the reasons set forth below, I will affirm the decision of the Commissioner.

## **Procedural History**

Plaintiff Cornnia Gapsch was born on December 9, 1964.  (Tr. 157.)  She is currently 58 years old.  The highest grade in school she completed was 9th grade.  (Tr. 196.)  In the several years before she applied for disability benefits Gapsch worked as a printer at a packaging company.  Her final employment, lasting only two months, was that of a parts gluer in a factory through a temp agency.  That employment ended in June 2017.  (Tr. 34-36, 168-169, 181.)

Gapsch protectively filed a Title II application for a period of disability and disability insurance benefits on September 19, 2019. (Tr. 9, 157.) She alleges that she became disabled beginning August 31, 2017, because of post-traumatic stress disorder (PTSD), anxiety, and depression. (Tr. 195.)

Plaintiff's application was initially denied on February 10, 2020. (Tr. 84.) A hearing was held before an Administrative Law Judge (ALJ) on November 2, 2020. At the hearing Plaintiff amended the alleged onset date of her disability to August 27, 2018. (Tr. 30.) Moreover, Plaintiff submitted that she had degenerative disc disease in the spine and osteopenia of the left hip which were also severe. (Tr. 31.) Plaintiff testified when she worked as a printer and gluer she lifted 40-50 pound items, stood at her work for the "most part," and operated machinery sometimes. (Tr. 34-36.) When the ALJ asked Plaintiff what prevented her from working full time, Plaintiff responded "[T]he lifting and the standing." (Tr. 36.) The ALJ issued a decision denying benefits on December 24, 2020. (Tr. 9-19.) On December 1, 2021, the Appeals Council denied plaintiff's request for review. (Tr. 1-3.) The ALJ's decision is now the final decision of the Commissioner. 42 U.S.C. §§ 405(g) and 1383(c)(3).

In this action for judicial review, Gapsch contends that the ALJ improperly determined that Gapsch had the residual functional capacity (RFC) to perform a reduced range of light work activity. Gapsch asserts that the medical evidence and

2

her testimony support a finding of a sedentary RFC, which based on her age, would direct a finding of disabled under the Medical-Vocational Guidelines. Gapsch also asserts that the ALJ erred by finding that Gapsch had a moderate limitation in concentrating, persisting or maintaining pace but failed to account for this limitation in the RFC. Gapsch requests that I reverse the Commissioner's final decision and remand the administrative decision for an award of benefits or for further evaluation. For the reasons that follow, I will deny Gapsch's request.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Gapcsh's recitation of uncontroverted material facts (ECF # 14-1) as corrected (ECF # 15-1) and supplemented by the Commissioner (ECF # 15-2). These uncontroverted material facts recite the medical records and findings in the record in addition to the plaintiff's statements regarding her condition submitted in written forms and in her testimony before the ALJ. Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.  Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552,

555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[1] If not, the disability analysis proceeds to the second step. In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If

---

[1] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe his physical or mental impairments are and regardless of her age, education, and work experience." (Tr. 11.)

4

the claimant's impairment(s) is not severe, then she is not disabled and the analysis ends. If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform her past relevant work.[2] If so, the claimant is not disabled. If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

    I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support

---

[2] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 12.)

5

a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such

6

matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[3] When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B.   ALJ's Decision

In her written decision, the ALJ found that Gapsch had not engaged in substantial gainful activity since August 27, 2018, the alleged onset of her disability. (Tr. 12.) The ALJ found that Gapsch had the following severe impairments: degenerative disc disease; depression; anxiety; PTSD; and obesity. The ALJ noted that plaintiff was treated for left hip pain but did not have a diagnosable condition related to it. (Id.) The ALJ determined that Gapsch's impairments or combination of impairments did not meet or medically equal a

---

[3] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

7

listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) The ALJ found Gapsch to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [Gapsch] is limited to the occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent stooping; occasional crouching and crawling; simple and routine tasks; simple work-related decisions; occasional interaction with co-workers and supervisors; occasional interaction with the public, but she can never handle complaints or a dissatisfied customer; and only occasional changes in a routine work setting.

(Tr. 14.) The ALJ found that Gapsch could perform her past relevant work as a gluer based on her RFC. (Tr. 18.) The ALJ consulted a vocational expert (VE) who testified that Gapsch could perform the job of gluer as it is generally performed in the national economy given Gapsch's reduced light work residual functional capacity. (Tr. 19, 53.) The ALJ therefore determined that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 19)

Gapsch contends that the ALJ improperly determined that Gapsch had the residual functional capacity (RFC) to perform a reduced range of light work activity. Gapsch asserts that the medical evidence and her testimony support a finding of a sedentary RFC, which based on her age, would direct a finding of disabled under the Medical-Vocational Guidelines. Gapsch also asserts that the ALJ erred by finding that Gapsch had a moderate limitation in concentrating, persisting or maintaining pace but failed to account for this limitation in the RFC.

8

C. RFC

Gapsch argues that that ALJ's determination that she could perform a reduced range of light work activity is not supported by substantial evidence. Gapsch contends that the medical evidence in the record and her testimony support a sedentary RFC. In support of this position Gapsch refers to the following medical evidence:

> August 27, 2018, x-ray of the lumbar spine showed grade 2 spondylolisthesis L5-S1, biconcave loss of the endplates at L4 and L5, degenerative changes of the lower lumbar facet joints and demineralization. (Tr. 305) October 22, 2020, MRI of the lumbar spine showed probable compression fractures involving the inferior endplates of T11, L4, and L5; mild disc dessication with diffuse annular disc bulge L4/5; 8mm of degenerative anterolisthesis of L5 on S1; diffuse annular disc bulge L5/S1, moderate central canal stenosis; and moderate to severe bilateral foraminal stenosis. (Tr. 357)

> On November 16, 2020, Plaintiff saw Dr. Bassam Hadi, M.D., a neurosurgeon at Mercy South for complaints of low back and lower extremity pain. She noted the pain was worse with standing and walking. Findings on examination included positive for back pain and gait problem, weakness, and she was noted to be nervous/anxious. The doctor noted that she was suffering from lumbar radiculopathy due to lumbar spondylolisthesis L5-S1 and required a lumbar decompression and fusion. (Tr. 371-377)

(ECF # 14 at 3-4)

The medical record in this case does not contain any medical opinions or other evidence that supports Gapsch's contention that her need for a lumbar decompression and fusion, in combination with her obesity, is incompatible with a light RFC. The MRI that revealed spondylolisthesis[4] and lumbar stenosis[5] was not performed until October 22, 2020. (Tr. 357.) The neurosurgeon, Bassam Hadi, M.D., made the recommendation for a lumbar decompression on November 16, 2020. (Tr. 373.) Dr. Hadi noted that Gapsch requested to hold off on surgery until February 2021 to which Dr. Hadi agreed.

Gapsch alleges her disability began on August 27, 2018. Gapsch did not allege any limiting physical conditions in the disability report she completed on September 24, 2019. (Tr. 195.) Gapsch did not note any physical limitations in her function report completed on December 3, 2019. (Tr. 202-209.) Nor did she list any medications for back pain in her list of medications submitted on September 3, 2020. (Tr. 258.)

On June 11, 2020, at the hearing before the ALJ, Gapsch testified that her back problems had been causing her pain at a level of 8 out of 10 for three or four years, maybe longer. (Tr. 37.) She testified that she does not use a cane, walker,

---

[4] Spondylolisthesis is a spinal condition that causes lower back pain. It occurs when one of your vertebrae, the bones of your spine, slips out of place onto the vertebra below it. Most of the time, nonsurgical treatment can relieve your symptoms. If you have severe spondylolisthesis, surgery is successful in most cases. https://my.clevelandclinic.org/health/diseases/10302-spondylolisthesis.

[5] Lumbar spinal stenosis is a narrowing of the spinal canal in the lower part of your back. Stenosis, which means narrowing, can cause pressure on your spinal cord or the nerves that go from your spinal cord to your muscles. https://www.hopkinsmedicine.org/health/conditions-and-diseases/lumbar-spinal-stenosis.

wheelchair, or brace.  (Tr. 38.)  She testified that she drove to the store and to the laundromat.  (Tr. 32.)  She is able to care for her personal needs like dressing and grooming.  (Tr. 41.)  She does housework, mopping, sweeping, vacuuming, washing dishes, and laundry but it causes pain in her back.  (Id.)  The cleaning of her house can take all day because her back starts hurting and she can't function.  (Tr. 41.)  To relieve her back pain she takes "a whole bunch of Advil or Aleve and wait[s] for it to quit hurting."  (Tr. 44.)  She also lays down to take the pressure off her back.  (Tr. 45.)

The ALJ referred to the above information in her decision and determined that Gapsch's self-described activities were consistent with an ability to perform a range of light work with some limitations.  I find that the ALJ's decision is supported by substantial evidence in the record.

In analyzing Gapsch's severe impairments of depression, anxiety, and PTSD, the ALJ determined that Gapsch had a moderate limitation in concentration, persisting, or maintaining pace.  Gapsch does not object to that finding but asserts that the ALJ erred by failing to account for this limitation in the RFC.  (ECF # 14 at 4)  Although the ALJ's RFC limited Gapsch to performing only simple and routine tasks, Gapsch argues that a "limitation to simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace."  (Id.)  The VE testified that if a worker is 10% off task then

11

they could not perform Gapsch's past relevant work as a gluer, or any other work. (Tr. 53.)  The VE also testified that the job of gluer would be eliminated if a worker was limited to "no fast-paced production quotas because of underlying mental impairments and there should be only like end-of-day production measurements." (Tr. 54.)  Gapsch asserts that these additional limitations, which were not included in the ALJ's RFC, more accurately account for a moderate limitation in concentration, persistence, and pace.  (ECF # 14 at 5)

      The ALJ's RFC is supported by substantial evidence.  The ALJ noted that Gapsch's treatment records do not show any mention of anxiety, depression, or PTSD until a full year after Gapsch's alleged onset date.  (Tr. 18.)  The ALJ found that "[i]t was not until August 2019 that she saw her internist for depression and then sought behavioral health treatment.  Even then, most mental signs were normal and she improved over time. By February 2020, Dr. Lowder noted that she was negative for anxiety or depression." (Id.)  This statement is fully supported in the record.  On February 5, 2020, after six months of behavioral health treatment, Gapsch reported that she was doing much better and her primary care provider, Catherine Lowder, M.D., reported Gapsch showed no signs of anxiety or depression.  (Tr. 290-291.)   Moreover, courts have routinely found that RFC's limiting claimants to simple, routine tasks adequately accounts for a moderate limitation if maintaining concentration, persistence, and pace.  Johnson v. Kijakazi,

12

No. 4:19-CV-2146 NAB, 2021 WL 5564499, at *4 (E.D. Mo. Nov. 29, 2021) (collecting United States Court of Appeals for the Eighth Circuit cases).  As a result, the ALJ's RFC is supported by substantial evidence.

## Conclusion

Based on the complete record in this case, I find that the ALJ's decision finding Gapsch not disabled is supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2023.